Roscoe C. **BARNES** et al., Appellants,

v.

**VADICO TERMINALS, INC.**, et al.,
Appellees.

No. 12903.

United States Court of Appeals
Fourth Circuit.

Argued Feb. 5, 1969.

Decided March 13, 1969.

Mark P. Friedlander, Jr., Arlington, Va. (Harry P. Friedlander, and Friedlander & Friedlander, Arlington, Va., on brief), for appellants.

James C. McKay, Washington, D. C., for appellee Marian A. Morrison.

Joseph B. Hyman, Alexandria, Va., for appellee Arthur R. Morrison.

Before SOBELOFF, BRYAN and CRAVEN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

Appellants Roscoe C. Barnes et al. would enforce against certain land in Rosslyn, Virginia or, alternatively, against a promissory note in the hands of appellee Arthur R. Morrison, a judgment the Barnes hold against appellee Vadico Terminals, Inc. In each instance the land or the note is alleged to be, in truth, an asset of Vadico although Vadico does not have the record title or possession.

The Barnes' judgment, procured on May 27, 1966, evolved from the default of Vadico on the purchase money notes it gave in buying from the Barnes, during the fall of 1962, an interest in a grain warehouse in Indiana. Although initially owned by Vadico, the Rosslyn land had passed to Morrison and his wife in June 1962, and thence in July 1963 to Capital Investors Company, in whom the title now stands. The sought-after note held by Morrison is for $500,000; it was given by Capital to Morrison in acquiring the land from him and his wife. Enforcement of the judgment as to the land asks for its sale; enforcement as to the note asks for its seizure or garnishment.

Relief was denied by the District Court; the Barnes appeal. In respect to the land, we think the ruling unassailable; in regard to the note, we remand for further inquiry.[1]

An intelligible narrative of this litigation requires the tracing of: (1) the courses of the land title and of the $500,000 note of Capital, and (2) the history of the notes of Vadico and the suit thereon leading to the judgment of the Barnes. Although chronology may at points be sacrificed, for clarity it is preferable to discuss all the pertinent events concerning the land title and the $500,000 note, before giving an account of the Barnes judgment.

Compressed, the ultimate facts are these.[2] With Arthur R. Morrison and Marian A., his wife, as its sole stockholders, Vadico was organized in Virginia, and in 1945 acquired land in Rosslyn, Virginia known as the Rosslyn property. Marital disruption led to their separation in October 1960; a property settlement was reached on June 6, 1962. By deed absolute on its face, in pursuance of this agreement, the Morrisons in their own right together with Vadico, on June 29, 1962, conveyed the Rosslyn property to Malcolm B. Devers, a friend and business associate of Arthur Morrison. This instrument was intended to create a trust in favor of the two Morrisons only, vesting no beneficial interest whatsoever in Devers.

Several months later, suspecting that Devers was about to dispose of it, Arthur Morrison leased the Rosslyn property for 99 years to Charles Fairchild, a real estate broker. Later Morrison sold, and by his sole deed dated May 18, 1963 purported to transfer, the tract to Capital Investors Company, ignoring altogether the Fairchild demise and Devers' record title. Subsequently and apparently by way of confirmation, Marian Morrison by deed dated July 25, 1963, and Arthur Morrison by deed dated July 29, 1963, each as a divorced and unremarried individual, granted to Capital.

For the purchase price, Capital delivered to the Morrisons its two notes of $500,000 each, one going to each of the Morrisons. Because Devers persisted in asserting dominion of the Rosslyn property, Capital successfully sued to quiet its title. The District Court declared, June 29, 1965, that the conveyance to Devers was not in fee, but rather a naked legal title in trust for the Morrisons. It annulled the leasehold of Fairchild as unauthorized; it required Capital to secure the two $500,000 notes by

1. Antecedents of this case appear as Capital Investors Co. v. Devers, 360 F. 2d 462 (4 Cir. 1966), cert. denied 385 U.S. 934, 87 S.Ct. 294, 17 L.Ed.2d 214, reh. denied 385 U.S. 1021, 87 S.Ct. 702, 17 L.Ed.2d 560 (1966) and Capital Investors Company v. Devers, 387 F.2d 591 (4 Cir. 1967).

2. The subsidiary facts are delineated in detail in Capital Investors Co. v. Devers, 360 F.2d 462, supra, footnote 1.

deed of trust upon the property; and it decreed that, as beneficial owners, the Morrisons could terminate the trust at will and put full legal and equitable title in Capital. We affirmed, in opinion cited in footnote 1, supra, 360 F.2d 462.

In the course of that appeal, the matter of interest upon the two $500,000 notes later emerged. On remand of this issue, the District Court allowed interest at 6%; concurrently it denied a motion for a new trial for newly discovered evidence. Again we affirmed, with opinion cited in footnote 1, supra, as 387 F.2d 591.

In 1962, after Vadico and the Morrisons had conveyed to Devers, a contract was made between appellants Barnes and Morrison, wherein the latter agreed as Vadico's agent to buy the one-half interest owned by the Barnes in the Indiana grain warehousing operation already mentioned. For the purchase price, Vadico delivered to the Barnes its two promissory notes of November 29, 1962, one for $175,000 and the other for $50,-000. The smaller note was endorsed personally by Morrison and Devers.

The warehouse business failed and Vadico defaulted on the two notes. Suing in the Circuit Court of Arlington County, Virginia, on May 27, 1966 the Barnes secured judgment against Vadico on both notes and, in addition, against Morrison and Devers upon their endorsements of the $50,000 one. The plaintiffs lost in their effort to fasten liability upon Morrison for the $175,000 note on his alleged promise to endorse it.

In the present action the Barnes endeavor to satisfy their judgment by subjecting to it the Rosslyn property alleged as an actual asset of Vadico, or in the alternative, by laying hold on the payments to Morrison from Capital upon its $500,000 note, also alleged to be actually an asset of Vadico. Subjection of the land was denied by the District Court, but on the $50,000 note-judgment the Barnes were allowed to capture these remittances to Morrison because he was a judgment debtor. The Court denied the same relief on the $175,000 note-judgment since Morrison was not on that note. These denials of the prayers of the Barnes are the grievances of their appeal.

I. Before examining the merits of this controversy, we look to the defense of res judicata pleaded by Morrison. Admittedly, the State court excused him of personal liability on the $175,000 note, but presently the Barnes are not attempting to saddle him with this obligation. If they failed in subjection of the land, they sought to take the $500,-000 note from him on the ground that, at least as to the Barnes, it is an asset of Vadico.

II. The Barnes' contentions here are:

(1) The Rosslyn property at the time of the conveyance to Capital by the Morrisons belonged to Vadico and Vadico was never thereafter divested of it. In this connection, appellants emphasize that they are not concluded by the quia timet decree, confirming title in Capital, for they were not parties to that suit.

(2) Even if the title was acquired by Capital, nevertheless the note of $500,-000 held by Morrison took the place of the property and is an asset of Vadico available to its creditors.

On the first contention, the argument is that when the Devers deed was impressed with a trust, the result was to revest the title where it was before the conveyance, i. e. in Vadico. Next it is said, the deed to Capital by the Morrisons was altogether ineffectual and the title remained in Vadico, because after the reversion of the ownership to Vadico, the Morrisons as stockholders had no title, and hence could pass none to Capital.

■ Answer to the Barnes' first contention is several fold. The decree of June 29, 1965 in Capital's quia timet suit did not vitiate the deed from Vadico and the Morrisons to Devers. It simply adjudged a constructive trust in the land for the benefit of the Morrisons. True, the alienation by Vadico in the Devers deed was of its entire assets, but in the absence of debts or other liabilities and

the stockholders consenting, as here, this was no sin.

■ When Vadico and the Morrisons conveyed to Devers on June 29, 1962, nothing was owed by them to the Barnes. The notes of $175,000 and $50,000 did not come into being until the fall of 1962. While the conveyance to Devers was wholly without consideration, in Virginia a voluntary transfer is voidable only as to prior or existing creditors. Va. Code, 1950, as amended, section 55–81. Since jurisdiction here rests on diversity of citizenship and the action originated in Virginia, her law governs. No prohibition there rendered the land unalienable in the manner pursued. Further, the District Judge resolved all doubts when he found that, at the time of the conveyance to Devers, the subsequent transaction between the Barnes and Morrison-Vadico was not in contemplation.

In their second contention the Barnes, to repeat, ask that Vadico be declared the rightful owner of Capital's $500,000 note in the custody of Morrison. This view is not tenable at this time. The circumstances in which we have just held that the claim by the Barnes, for the ownership by Vadico of the Rosslyn property, are those on which the Barnes also mount their claim on the note. If they do not warrant a decree of Vadico's ownership of the land, they would not warrant a finding of its entitlement to the note, for the latter is the property's substitute.

On this ground, we deny the second contention of the Barnes, but the record indicates there may be additional circumstances which, if established, would uphold the Barnes claim against the note.

III. These circumstances, to be related in a moment, might create an equitable estoppel against Arthur Morrison precluding him from denying that the note in his possession is an asset of Vadico. The record discloses that as late as October 1962 and April 1963—after the conveyance of the Rosslyn property to Devers, but before the sale by the Morrisons to Capital—Arthur Morrison represented to the Barnes that Vadico was then the owner of the Rosslyn property.

The first statement by him to the Barnes was made, seemingly, to induce them to accept the notes of Vadico in payment of the grain warehouse interest, which Vadico was buying from the Barnes. Indeed, Morrison took the Barnes to Rosslyn and pointed out this very land as an asset of Vadico. The contract with the Barnes was signed by Morrison as the agent of Vadico. At no time did Morrison ever explain that the title to the Rosslyn property had previously been conveyed to Devers for the use of the Morrisons.

The second occasion on which Morrison affirmed this representation to Barnes was in April 1963, when the Barnes were seeking to collect the payments owing on the two notes of $175,000 and $50,000 given to them by Vadico. Again, Morrison, in discussions in joint conference with his lawyer, the Barnes and their attorney, made them understand that the Rosslyn property continued to be Vadico's. He again concealed the actual state of the legal title.

All of this was given in evidence by the Barnes in this case and not disputed by Morrison. Upon the subject the District Judge made a special finding:

"The Court finds that Mr. Morrison did point out certain properties in Rosslyn, Virginia, and falsely represented that they, the properties, were owned by Vadico Terminals, Inc."

Later in the course of the trial the District Judge also commented:

"I do find that Mr. Morrison told a material lie to Mr. Barnes, and if there is any way in which this Court can with propriety protect Mr. Barnes, I wish to do it. I am not at all sure, however, that I have the right to do what you request [to subject the $500,000 note held by Morrison to the judgments of the Barnes]."

In respect to the finding of Morrison's duplicity, we are not unaware that 'it was made before Morrison had an opportunity to testify or to adduce evidence. The reason is that at that stage the District Judge had announced judgment for the Barnes against Morrison and Vadico, on the latter's $50,000 note, and in favor of Morrison on the Barnes' attempt to hold him responsible on the $175,000 note. Nevertheless, the case proceeded on the Barnes' pursuit of a seizure or garnishment of the $500,000 Capital note (in Morrison's possession) to satisfy the Barnes' judgment against Morrison on the $50,000 note. Thereupon, on this issue, Morrison did offer evidence. However, he did not take the stand and he made no effort to erase or modify the findings theretofore stated by the Court. Nor did he afterwards request the Court to amend its findings under F.R.Civ.P. 52(b).

■ The District Judge, as just quoted, expressed a desire to grant some relief to the Barnes because of Morrison's deception of the Barnes but he then saw no way to accord a remedy. If these statements were made by Morrison to cause the Barnes to accept the notes of Vadico, and did in fact cause them to take the notes, then this inducement clearly caused the loss to the Barnes on the notes, for which reimbursement is now asked. These and other circumstances might equitably estop Morrison to claim the $500,000 note as against the Barnes' assertion that it is an asset of Vadico.

As the District Court has never passed upon this issue, and its resolution may require additional evidence, we will remand the cause for a decision by the District Judge.

In the event the District Court gives judgment for the Barnes on the theory that the note is an asset of Vadico, the proceeds of the note or its liquidation could be distributed in the manner provided by the law of Virginia for distribution of a dissolved corporation's assets. The State Corporation Commission of Virginia has now dissolved Vadi-co for its failure to pay corporate fees, etc. Section 13.1–79 et seq., Virginia Code, 1950 provide for distributing the property of a dissolved corporation.

In the light of the findings made by the District Court in reference to the conduct of Arthur Morrison, we think that the Court would be justified, pendente lite, in enjoining him from disposing of the note, and in sequestering the note for collection.

■ We will affirm the judgment of the District Court insofar as it declares the Rosslyn property free of the lien of the Barnes judgment, but we will vacate so much of the order as denies the Barnes recourse to Capital's $500,000 note. The cause will be remanded to the District Court for further proceedings not inconsistent with this opinion.

Affirmed in part; vacated in part, with directions.